IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANNE MERICAL, | ) |
| | ) |
| Plaintiff, | )   Civil Action No. 12-1681 |
| | ) |
| v. | )   Judge Cathy Bissoon |
| | ) |
| VALOR HEALTHCARE, INC., | ) |
| MICHELLE R. SIMON, M.D., | ) |
| KEITH MCMORRIS, | ) |
| EMILY MILICH-FRANUSICH, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

### I. MEMORANDUM

For the reasons that follow, Defendant Simon's and Defendant McMorris's Motions to Dismiss for Lack of Personal Jurisdiction (Docs. 11 and 12) will be granted.

**A. BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff began working as a behavior health therapist at Valor's Outpatient Clinic in Greensburg, Pennsylvania in February 2009. Comp. at ¶ 11. Valor is a District of Columbia Corporation with its principal place of business in the District of Columbia. Id. at 5. Defendant Michelle R. Simon, M.D., was Plaintiff's supervisor, and at all relevant times, worked in Valor's Houma, Louisiana office. Id. at 8. Defendant Keith McMorris was Valor's Human Resources Director and was employed at all relevant times in Valor's District of Columbia office. Id. at 9.

Plaintiff is a Caucasian woman in her mid-fifties who is epileptic and suffers from post-traumatic stress disorder, depression, and anxiety/stress. Id. at 18, 24, 41. Plaintiff alleges that during her employment with Valor, her patient load was excessive and nearly impossible to

manage, which subjected her to "constant and continual stress." Id. at 19.  Plaintiff alleges that she frequently asked Valor's management for help with her case load and submitted several complaints to the VA Office of Inspector General regarding Valor's treatment of its veteran patients, but Valor refused to provide her with assistance.  Id. at 23, 27.  Plaintiff alleges that the majority of Valor's middle-management is African-American and the Human Resources Director, Defendant McMorris, exhibited a "racial and gender animosity" toward her.  Id. at 24.  Plaintiff also alleges that her Administrator, Defendant Milich-Franusich, "engaged in a concerted effort to harass, demean, and humiliate her" as a result of her age and disability.  Id. at 30.  Plaintiff, unlike other health care providers at her clinic, also allegedly was denied 10 paid days off for training and a $2,000 annual benefit in February 2011.  Id. at 32.

As a result of a mental health evaluation in March 2011, Plaintiff's PCP provided Valor's Human Resources Director, Defendant McMorris, with a medical certificate on March 16, 2011, stating that, due to illness, Plaintiff was unable to return to work until March 28, 2011.  Id. at 35.  On March 21st, Plaintiff's psychiatrist also informed McMorris that Plaintiff could not return to work "until further notice."  Id.  Valor approved an unpaid medical leave for Merical through March 27th.  Id. at 36.  Plaintiff's psychiatrist subsequently provided McMorris with a notice that Plaintiff would not be able to return until June 30th and Plaintiff submitted an application for short term disability benefits to McMorris via Fed-Ex on April 6th.  Id. at 38.  Valor subsequently terminated Plaintiff's employment on April 13th, stating that "based upon our business needs, and in light of the continuing hostile and inappropriate behavior that you have displayed to members of our team, Valor has decided not to continue your discretionary leave of absence."  Id. at 39.  Valor was replaced with a male in his mid-30's. Id. at 42.

Plaintiff filed a five-count complaint (Doc. 1) on November 15, 2012, alleging in Count IV that Defendants Simon and McMorris aided and abetted her employer, Valor, in violation of the Pennsylvania Human Relations Act, 43 Pa. C. S. A. §955(e) ("PHRA") by allegedly being "well aware of the unlawful harassment and discrimination based upon gender, age, race, and disability . . . and [by doing] nothing to stop [it], and in fact, they even perpetuated it and retaliated against Plaintiff by supporting and recommending [her] discharge. Id. at 70. Simon and McMorris filed separate motions (Docs. 11 and 12) to dismiss Plaintiff's complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2).

## B. ANALYSIS

For purposes of Rule 12(b)(2), a court must accept Plaintiff's allegations as true and draw in the plaintiff's favor all reasonable inferences supported by the well-pleaded factual allegations. Carteret Sav. Bank, FA, v. Shushan, 954 F.2d 141, 151 n.1 (3d Cir. 1992). However, "once a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996); see also Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) (unless court holds an evidentiary hearing, plaintiff need only make *prima facie* showing of personal jurisdiction under Rule 12(b)(2)). In reviewing a Rule 12(b)(2) motion, a Court may consider the well-pleaded factual allegations in the complaint in addition to the parties' jurisdictional evidence. Metcalfe, 566 F.3d at 330-31.

A federal district court may assert personal jurisdiction over a nonresident to the extent authorized by the state's long-arm statute. Fed. R. Civ. P. 4(k); Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007). Pennsylvania's long-arm statute provides for jurisdiction "to the fullest extent" permitted under the Due Process Clause of the Fourteenth Amendment. 42 Pa. Cons.

Stat. §§ 5322(a)-(b).  In order to satisfy due process, the defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  The focus of the minimum contacts analysis is "the relationship among the defendant, the forum, and the litigation," specifically the extent to which the defendant has, through its contacts, "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefit and protection of its laws."  Shaffer v. Heitner, 433 U.S. 186, 204 (1977); Hanson v. Denckla, 357 U.S. 235, 253 (1958).   Jurisdiction "over an employee does not automatically follow from jurisdiction over the corporation which employees him."  Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984). Instead, each defendant's contacts "must be assessed individually."  Id.

In order for a court to exercise general personal jurisdiction, the defendant must have "maintained systemic and continuous contacts" with the forum state.  Marten, 499 F.3d at 296 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–15 & n. 8 (1984)).  Alternatively, specific personal jurisdiction exists "when the claim arises from or relates to conduct purposely directed at the forum state."  Id.  To establish specific jurisdiction, the plaintiff must prove:  (1) the defendant has purposefully directed his activities at the forum; (2) the plaintiff's claim arises out of or relates to at least one of those specific activities, and (3) that the court's exercise of jurisdiction over the defendant comports with traditional notions of fair play and substantial justice.  Marten, 499 F.3d at 296 (discussing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985); Helicopteros, 466 U.S. at 414; Int'l Shoe, 326 U.S. at 320)).

When a Plaintiff's complaint alleges intentionally tortious conduct, the "effects test," established in Calder v. Jones, 465 U.S. 783 (1984), could "enhance otherwise insufficient contact with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 260 (3d Cir. 1998). Under this test, a Plaintiff can demonstrate personal jurisdiction if she shows "(1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and] (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." Marten, 499 F.3d at 297.

Here, Plaintiff has provided the Court with additional materials beyond her complaint in an attempt to support her assertion that this Court has personal jurisdiction over Defendants Simon and McMorris.[1] Specifically, Plaintiff has provided the Court with a copy of her EEOC charge and a signed declaration with attached exhibits. Plaintiff asserts that she has met her burden of proving personal jurisdiction under both the general and specific theories, and argues that she has also shown that the Defendant's tortious conduct caused harm in Pennsylvania. After thorough examination of those documents, the Court concludes that Plaintiff has not met her burden of establishing that Simon and McMorris have the requisite minimum contacts to enable this Court to exercise personal jurisdiction, under any of the alleged theories.

---

[1] Because this Court must be satisfied at all times that it has the power to hear the case, it "may consider evidence outside the pleadings" "to resolve factual issues bearing on jurisdiction." Gould Electronics Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000); Gotha v. U.S., 115 F.3d 176, 179 (3d Cir. 1997); Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc., 673 F.2d 700, 711 (3d Cir. 1982). Once the defendant presents extrinsic evidence contesting the jurisdictional facts set forth in the complaint, the court must permit the plaintiff to respond. Gould Electronics, 220 F.3d at 177. "The court may then determine jurisdiction by weighing the evidence presented by the parties," "*evaluating for itself* the merits of the jurisdictional claims." Id.; Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977) (emphasis added).

The record reflects that neither Simon nor McMorris lived or worked in Pennsylvania. Contrary to the Defendant's assertion that both defendants are "intimately intertwined" with the Greensburg office, defendants' contacts with the Pennsylvania, all solely through their acts as Valor employees, do not establish the requisite "systemic and continuous" contacts with Pennsylvania to subject them to general jurisdiction in this forum. Further, assuming for the purposes of this case that Defendants' alleged conduct is the type that may be captured by the Calder effects test, Plaintiff has only vaguely argued that Pennsylvania has personal jurisdiction over Defendants because "Defendants' actions caused the harm (tortious conduct) in Pennsylvania." She also failed to address whether Defendants "expressly aimed their conduct at Pennsylvania," as is required to meet the third element of the test. Thus, the Court will focus on the issue of specific jurisdiction and examine the contacts of each Defendant separately.

**A. McMorris**

The record reflects, and Plaintiff does not dispute, that Defendant McMorris has never worked or lived in the state of Pennsylvania. At all relevant times, McMorris resided in the District of Columbia, where he was employed at Valor's District of Columbia office.

Plaintiff alleges that as Human Resources Director, McMorris communicated with her via calls and emails at least on a monthly basis. Pl.'s Br. Opp., (Doc. 19) Ex. B at ¶¶ 6-7. McMorris was involved with administrative decisions involving all of Valor's contracts, including the Greensburg clinic. Pl.'s Br. Opp. at 6. Plaintiff specifically asked McMorris and other Corporate employees for help regarding her heavy workload, but such help was not provided. Comp. at ¶ 23. Plaintiff spoke with McMorris about her 2010 performance evaluations because she did not receive a merit salary increase despite receiving an "outstanding" rating, and Plaintiff

spoke with McMorris about her 2011 evaluation, when she did receive a merit raise despite an "unwarranted" rating of "satisfactory." Pl.'s Br. Opp., Ex. B at ¶ 8.

Plaintiff alleges that McMorris travelled to Pennsylvania on two occasions during Plaintiff's employment with Valor. Specifically, McMorris allegedly travelled to the Greensburg office in March or April 2009, shortly after Plaintiff began working for Valor and then again in March or April 2011 to interview the staff about personnel and staffing issues.[2] Plaintiff alleges that McMorris asked her to meet with him in a local restaurant during that visit, but she was unable to do so. Id. at 9, 11.

Plaintiff vaguely alleges that McMorris exhibited a racial and gender animosity toward her as a Caucasian woman and was "often very nasty towards her in his email responses." Comp. at ¶¶ 23-24. McMorris allegedly "engaged in a pattern of consternation and harassment aimed not only at Plaintiff's political and social beliefs, but also her race and gender." Pl.'s Br. Opp. at 5. Despite her reliance on materials outside the pleadings, nowhere does Plaintiff provide anything but the most vague of allegations against Defendant McMorris.[3] McMorris also corresponded with Plaintiff regarding her requests for medical leave and her subsequent termination by mailing two letters to Plaintiff's Pennsylvania address, one granting her a discretionary leave of absence; and another asking for clarification about her return date. Pl.'s Br. Opp., Ex. 4. McMorris sent Plaintiff's termination letter to her Pennsylvania address on April 13, 2011, via Fed-Ex. Pl.'s Br. Opp., Ex. 5.

---

[2] This Court recognizes that there is a dispute between the parties as to whether McMorris travelled to the Greensburg office in 2011. McMorris argues that he only visited the Greensburg office once, in 2009. However, this factual dispute is not dispositive of the issue of personal jurisdiction.

[3] Plaintiff does specifically allege that McMorris told her that she was "too conservative" when she first began at Valor. Comp. at ¶ 24. The relevance of this comment to Plaintiff's claims remains unclear to the Court.

Defendant has not met the burden of establishing specific jurisdiction over McMorris. Not only are some of the alleged contacts with Pennsylvania, such as the visits to the Greensburg office, unrelated to the instant claim, but all of these alleged actions were taken by McMorris in his role as Human Resources Directors with Valor. With the exception of the completely vague allegations regarding so-called harassment and a "racial and gender animosity" towards Plaintiff, all of these interactions between McMorris and the forum state were taken in his professional capacity as Human Resources Director at Valor, and are normal interactions that an Human Resources Director would have with such employees.

In similar cases, Courts have found that the conduct described above was insufficient to establish minimum contacts for personal jurisdiction. See Violanti v. Emery Worldwide A-CF Co., 847 F. Supp. 1251 (M.D. Pa. 1994) (finding that when "the only asserted basis for the existence of jurisdiction over [defendants was] their alleged complicity in violating the PHRA by terminating plaintiff's employment on the basis of age," it was "plainly insufficient to establish the requisite minimum contacts with this jurisdiction."); Lane v. Lucent Techs., Inc., 388 F.Supp.2d 590 (M.D.N.C. 2005) (finding no personal jurisdiction when defendant's only interaction with the Plaintiff was in the context of his employment as a Human Resources employee responding to Plaintiff's employment discrimination claims); Nelligan v. Zaio Corp., 2011 WL 1085525 (D.N.J. Mar. 21, 2011) (finding no personal jurisdiction over employees accused of aiding and abetting their employer in discrimination because defendants were acting in their professional capacity and plaintiff could not sufficiently allege that defendants could be individually liable for their actions).

Nor can it be said that the communications between McMorris and Plaintiff, a Pennsylvania resident, were done to "purposefully [avail himself] of the privilege of conducting

activities within the forum State, thus invoking the benefits and protections of its laws." See Metcalfe, 566 F.3d at 338. Instead, McMorris communicated with Plaintiff because he was required to do so as a part of his duties as Human Resources Director of a national company. If McMorris were subject to personal jurisdiction in Pennsylvania as a result of his email, telephone and mail communications with Valor employees in his professional role, the result would be to subject him to jurisdiction in nearly every state in which Valor operates. Such a result does not comport with notions of due process. See Simpson v. Lifespring, Inc., 572 F.Supp. 1251, 1253 (E.D. Pa. 1983) (finding that to subject the defendant to personal jurisdiction as a result of actions taken in his corporate capacity would "force him to defend himself in every forum where [the corporation] conducts its operations" and would "distort[] the due process limits of personal jurisdiction"); Bangura v. Penrose Mgmt Co., 2010 WL 2539419, *3 (D.N.J. June 15, 2010) (finding no personal jurisdiction over supervisors in a Federal False Claims Act case because "the necessity of communicating with an employee who happens to work in [the forum state] cannot be said to show that the supervisors purposefully directed their activities at [the forum state]).

With regards to the allegations that McMorris exhibited a "racial and gender animosity" towards Plaintiff, the record contains no further information regarding such conduct, beyond the claim that McMorris referred to Plaintiff as "too conservative" when she first began working at Valor.[4] Plaintiff also provided an email exchange with McMorris in support of personal jurisdiction. Neither Defendant McMorris's alleged comment, nor the email exchange contains any reference to Plaintiff's race or gender or provide any insight into Plaintiff's aiding and

---

[4] In stark contrast, Plaintiff alleged several specific statements that Defendant Emily Milich-Franusich, who is not a participant in this instant motion, made in regards to her age and disability. See Comp. at ¶¶ 30-31.

abetting claim against McMorris.  Moreover, the letters from McMorris regarding medical leave or Plaintiff's termination contain no evidence of such "racial and gender animosity" as vaguely alleged by Plaintiff in the record.  Instead, this evidence tends to show that these were communications that would normally be taken by a Human Resources Director to an individual employee. Having reviewed Plaintiff's proffered jurisdictional evidence, Plaintiff simply has not met her burden to establish that this Court has personal jurisdiction over McMorris.

   **B.  Simon**

Defendant Simon's contacts with Pennsylvania are even weaker than those of McMorris.  The record reflects, and Plaintiff does not dispute, that Simon has never lived or worked in Pennsylvania, and Simon has never visited the Greensburg office. At all relevant times, Simon lived and worked in the state of Louisiana. Plaintiff alleges that Simon was Plaintiff's direct medical supervisor[5] who supervised "all mental health decision making by the Greensburg, Pennsylvania medical staff." Comp. at ¶ 8; Pl.'s Br. Opp. at 4-5.  Simon allegedly corresponded with Plaintiff via telephone and email, and was responsible for the review and implementation of Plaintiff's clinical recommendations, provided feedback to Plaintiff, and made corrections and suggestions to Plaintiff's clinical plans. Pl.'s Br. Opp. at 5.  Simon participated in Plaintiff's performance evaluations in 2009 and 2010.  Pl.'s Br. Opp., Ex. B at ¶ 3.  Further, Plaintiff alleges that she repeatedly requested help from Simon and other members of Valor management regarding her heavy workload but was not provided any assistance.  Comp. at ¶ 23.

For the reasons stated above with regards to Defendant McMorris, Plaintiff also has not met her burden of establishing that Simon has the requisite minimum contacts with this state to

---

[5] This Court recognizes that there is a dispute between parties as to whether Simon was, in fact, Plaintiff's "direct medical supervisor."  However, this factual dispute is not dispositive of the issue of personal jurisdiction.

establish personal jurisdiction. Not only were all of these contacts taken by Simon in her professional capacity at Valor, which would be normal actions taken by any employee with supervisory duties over an employee, but these alleged contacts with Plaintiff in the forum state, such as the performance reviews, are unrelated to the instant claim. These contacts are insufficient to exercise personal jurisdiction over Simon in Pennsylvania. See Nelligan v. Zaio Corp., 2011 WL 1085525, *6 (D.N.J. Mar. 21, 2011) (finding that a defendant's status as plaintiff's direct supervisor is "insufficient on its own to warrant personal jurisdiction").

## II. ORDER

Consistent with the foregoing, Defendant Simon's and Defendant McMorris's Motions to Dismiss for Lack of Personal Jurisdiction (Docs. 11 and 12) are **GRANTED** and these claims are dismissed with prejudice.

IT IS SO ORDERED.


September 25, 2013                           s\Cathy Bissoon
                                             Cathy Bissoon
                                             United States District Judge


cc (via ECF email notification):

All Counsel of Record